## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

----------------------------------------------------- :
                           :

| | | |
|---|---|---|
| In re | : | Chapter 9 |
| | : | |
| CITY OF DETROIT, MICHIGAN, | : | Case No. 13-53846 |
| | : | |
| Debtor. | : | Hon. Steven W. Rhodes |

----------------------------------------------------- :

| | | |
|---|---|---|
| NATIONAL PUBLIC FINANCE | : | |
| GUARANTEE CORPORATION and | : | |
| ASSURED GUARANTY MUNICIPAL | : | Chapter 9 |
| CORP., | : | |
| Plaintiffs, | : | Adv. Pro. No. 13-05309 |
| | : | |
| v. | : | Hon. Steven W. Rhodes |
| | : | |
| CITY OF DETROIT, MICHIGAN, *et al.,* | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

_____ :

---

## CITY OF DETROIT'S OBJECTION TO PLAINTIFFS' MOTION FOR EXPEDITED ADJUDICATION OF COMPLAINT

The City of Detroit (the "<u>City</u>") opposes the relief requested in the

Plaintiffs' Motion for Expedited Adjudication of their Complaint (the "<u>Motion</u>").[1]

---

[1]    Capitalized terms used but not defined herein are accorded the meanings given to them in the Motion.

CHI-1911792v3

## OBJECTION

1.    On November 8, 2013, the Plaintiffs filed their "Complaint for Declaratory Judgment and Order" (the "Complaint"), thus initiating this adversary proceeding.  Contemporaneously with the Complaint (along with hundreds, if not thousands, of pages of exhibits), the Plaintiffs filed the Motion, as well as their *Ex Parte* Motion for an Expedited Hearing with Respect to Plaintiffs' Motion for Expedited Adjudication of Complaint (the "Ex Parte Motion").[2]  The Motion is currently scheduled to be heard on November 27, 2013.

2.    The Complaint seeks a declaratory judgment that holders of certain unlimited tax general obligation bonds (the "UTGO Bonds"), which are insured by the Plaintiffs, have some form of property right in some of the *ad valorem* taxes collected by the City (the "Tax Revenue") and further seeks injunctive relief against the City requiring that the Tax Revenue be segregated and not used by the City pending the outcome of this bankruptcy case.  This relief, of course, closely resembles a classic form of adequate protection.[3]

---

[2]    Also on November 8, 2013, Ambac Assurance Corporation ("Ambac") initiated a separate adversary proceeding, seeking relief similar to that sought by the Plaintiffs in the Complaint.  Like the Plaintiffs here, Ambac also sought by motion to expedite the adjudication of its complaint.  The City has filed an objection to that relief in the Ambac adversary proceeding.

[3]    To the extent that the relief sought in the Complaint seeks to direct the City's use of its property and revenue, the Complaint seeks relief that cannot

CHI-1911792v3

3.    In the Motion, the Plaintiffs seek — without citing a single statute, rule or case — the extraordinary relief of expediting adjudication of this litigation notwithstanding that the Complaint fails to plead essential elements necessary to the resolution of their claims and fails to include other necessary parties to this litigation.

4.    In support of the relief requested, the Plaintiffs summarily state that "the relief sought in the Complaint is ripe for adjudication" and the "Complaint involves issues of law and undisputed facts" which can be resolved on an expedited basis without fact discovery.  <u>See</u> Motion ¶ 5.  Nevertheless, the issues implicated by the Complaint are not nearly as confined as the Plaintiffs would have this Court believe.

**A.    *The Court Should Not Enter Any Scheduling Order Until All Persons Who Will Be Parties Herein Have Been Joined***

5.    The UTGO Bonds are not the only unlimited tax general obligation bonds of the City.  Some of the other bonds are also insured, but by other monoline insurers.  Some are not insured at all.  Moreover, the Plaintiffs only

---

be granted.  <u>See</u> <u>In re City of Stockton, California</u>, 478 B.R. 8, 20 (Bankr. E.D. Ca. 2012) (holding that Section 904 "is so comprehensive that it can only mean that a federal court can use no tool in its toolkit – no inherent authority power, no implied equitable power, no Bankruptcy Code §105 power, no writ, no stay, no order – to interfere with a municipality regarding political or governmental powers, property or revenues, or use or enjoyment of income-producing property.").

have rights with respect to the UTGO Bonds that were allegedly assigned to them when Plaintiffs made certain payments to bondholders. It seems that all rights to future payments under the UTGO Bonds insured by the Plaintiffs are held by the bondholders themselves. Yet, none of the bondholders are currently parties to the litigation despite the fact that, given the allegations in the Complaint, the outcome of this litigation will clearly impact all bondholders.

6. Indeed, if the Plaintiffs were to succeed on their Complaint, the ruling would potentially bind the City with respect to other holders of unlimited tax general obligation bonds. If the City were to prevail, other holders of unlimited tax general obligation bonds may not be bound by the ruling, and, thus, the City may be forced to litigate these very issues again. In that regard, there is clear risk to the City of piecemeal adjudication and inconsistent results.

7. This failure of joinder should be addressed before this action proceeds to the merits. Resolution of this action in its current posture runs the risk of impairing the ability of other monoline insurers, bondholders and other creditors to protect their interests. Similarly, the City may be at risk of incurring multiple or inconsistent obligations with respect to its tax levies and expenditures. See Bankr. R. Civ. Proc. 7019(a)(1)(B). Finally, as a matter of orderly procedure and efficient administration of this exceedingly complex case, it would be appropriate to join

CHI-1911792v3

these other parties because of the issues of law and fact common to their claims. See Bankr. R. Civ. Proc. 7020(a)(1)(B).[4]

8.    Additionally, the relief requested by the Plaintiffs will reduce amounts available for distribution to the City's unsecured creditors. Certain of such creditors may seek to intervene in this litigation and some may be entitled to do so.

9.    For the forgoing reasons, this litigation, as it will ultimately be framed by proper pleadings, cannot be resolved along the dramatically shortened time-frame proposed in the Motion.

**B.    *The Court Should Not Enter a Scheduling Order Until All Responsive Pleadings Have Been Filed and the Issues To Be Decided Become Clear***

10.    This Court has likely realized that the Complaint, at its essence, is a request for adequate protection for the Plaintiffs' alleged interest in the Tax Revenue. It is black-letter law that, on a request for adequate protection, the

---

[4]    In their Complaint, the Plaintiffs seek a declaration from the Court prohibiting the Defendants from granting super-priority status or any other interest to any person or creditor in the Tax Revenue. See Complaint ¶ 10. The Plaintiffs, however, submitted a lending proposal to the City in connection with the City's efforts to raise capital in which the Plaintiffs sought the very same super-priority administrative expense status in the bankruptcy case that is contemplated in the Financing Motion (as defined below). Because the Plaintiffs sought to advantage themselves in the bankruptcy case, presumably to the detriment of other unlimited tax general obligation bond holders, the Plaintiffs cannot now properly represent the interests of all other similarly situated bond holders or insurers.

moving party carries the burden to establish the existence of a security interest that is entitled to adequate protection. See In re Chama, Inc., 265 B.R. 662, 669 (Bankr. D. Del. 2000) (holding that an unsecured creditor with no secured interest in property is not entitled to adequate protection); In re Southern Biotech, Inc., 37 B.R. 318, 324 (Bankr. Fla. 1983) (holding that "there is no express statutory requirement that holders of unsecured claims be provided 'adequate protection' ….").

11.     It appears that the Plaintiffs have filed the Complaint, instead of moving in the bankruptcy case for adequate protection, because they cannot prove the existence of a valid and enforceable lien in the Tax Revenue.  In fact, the Plaintiffs improperly attempt to defer this very issue — the existence of a valid lien — for a later time, while nevertheless seeking immediate relief from the Court to require the City to hold the Tax Revenues in trust pending the outcome of this bankruptcy case.  Complaint fn 1.  This is inappropriate for two reasons.  First, what the Plaintiffs are attempting is improper claim splitting, in that the Plaintiffs are required to bring all of their claims related to the allegations in the Complaint against the City at once.  Second, the issue of whether the Plaintiffs hold a valid lien in the Tax Revenues is an unavoidable prerequisite to any determination of whether the relief sought by the Plaintiffs is appropriate.  For both reasons, the

CHI-1911792v3

issue of whether the Plaintiffs have a valid lien must be decided in connection with the Complaint.

12.     It naturally follows that, if the Plaintiffs do not maintain valid and enforceable liens in the Tax Revenues, any state statutes that purport to channel specific revenues to pay the UTGO Bonds ahead of other creditors conflict with the distribution provisions of the Bankruptcy Code and are unenforceable in this proceeding.   Thus, the relief sought in the Complaint turns on the issue of whether a lien exists in the first instance, and that issue cannot be deferred to a later time.

13.     For the foregoing reasons the City will (and indeed, may be required to) raise that issue in its response to the Complaint.  Rule 13(a) F.R.Civ.P. (requiring a party to include counterclaims in a responsive pleading that arise out of the same transaction or occurrence that is the subject matter of the complaint).[5]

14.     Additionally, the litigation may be subject to the automatic stay, particularly as it pertains to the Individual Defendants named in the Complaint, who are likely the subject of this Court's order extending the automatic stay  to certain "Non-Officer Employees" and "City Agents and Representatives" of the City, dated July 25, 2013 [Docket No. 166].

---

[5]     The Plaintiffs assert in the Complaint that resolving the issue of whether there exists a lien in favor of the Plaintiffs would entail "necessary and appropriate fact and expert discovery."  Complaint fn 1.

-7-

15.     The City also may assert other defenses and counterclaims, which may require additional fact discovery.  Until the City has responded to the Complaint, and the legal and factual issues before this Court are made clear, this Court should refrain from entering any scheduling orders in this litigation.

## <u>CONCLUSION</u>

For each of the forgoing reasons, the City submits that this litigation cannot proceed along the time-frame proposed in the Motion and respectfully requests that the Motion be denied.  The City further requests that it be afforded additional time to respond to the Complaint and that such response be due on or before December 19, 2013.  The City has no objection to the setting of a scheduling conference for a date after the pleadings have been settled to discuss scheduling matters in this litigation.

CHI-1911792v3

Dated: November 22, 2013          Respectfully submitted,

/s/ David G. Heiman
David G. Heiman (OH 0038271)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Brad B. Erens
JONES DAY
77 W. Wacker Dr.
Chicago, IL 60601
Telephone:  (312) 269-3939
Facsimile:  (312) 782-8585
bberens@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

ATTORNEYS FOR THE CITY