| | |
|---|---|
| In re:<br><br>CITY OF DETROIT, MICHIGAN,<br><br>　　　　Debtor. | Chapter 9<br><br>Case No. 13-53846<br><br>Hon. Steven W. Rhodes |
| NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION and ASSURED GUARANTY MUNICIPAL CORP.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>CITY OF DETROIT, MICHIGAN, *et al.*,<br><br>　　　　Defendants. | Chapter 9<br><br>Adv. Pro. No. 13-05309-swr<br><br>Hon. Steven W. Rhodes |

**PLAINTIFFS' REPLY TO DEFENDANT CITY OF DETROIT'S OBJECTION TO PLAINTIFFS' MOTION FOR EXPEDITED ADJUDICATION OF THE COMPLAINT**

Plaintiffs submit this Reply in response to the City's Objection to Plaintiffs' Motion for Expedited Adjudication of Plaintiffs' Complaint.[1]

---

[1] Capitalized terms have the same meanings as they have in the Motion and the Complaint.

## I. Preliminary Statement

1. The City's Objection wholly misrepresents the limited nature of the relief sought in the Complaint and the Motion. That relief plainly does *not* require this Court to determine at this time whether Plaintiffs are entitled to adequate protection, nor will the requested relief "reduce amounts available for distribution to the City's unsecured creditors." And the relief sought certainly does *not* require the joinder of any other parties, whose individual interests are not impacted by the Court's determination of the merits of the Complaint.

2. Rather, the Complaint seeks resolution of a discrete but important legal issue: whether during the pendency of this chapter 9 proceeding, the City can divert and spend voter-approved taxes that are levied and collected pursuant to a statutory scheme that requires that they be segregated and deposited in a separate fund and used solely to repay the Unlimited Tax Bonds. In other words, Plaintiffs seek clarification of whether the City and its representatives must abide by Michigan law during the pendency of this chapter 9 bankruptcy proceeding. Plaintiffs submit that the City must do so, and that the Court can resolve this narrow legal issue without the need for discovery and without the joinder of any other parties. The City certainly does not need until December 19, 2013 – a full seven weeks from the date that the Complaint was served – to respond to the narrow issue of whether it has the unfettered discretion to divert Restricted Funds

in violation of Michigan law. Accordingly, Plaintiffs request that the Court grant the Motion and set an expedited schedule to address this issue.

## II. The City Mischaracterizes the Relief Sought in the Complaint

3. In its Objection, the City does not deny that under Michigan law, taxes levied and collected for purposes of paying the Unlimited Tax Bonds are Restricted Funds that must be segregated for ultimate payment of the Unlimited Tax Bonds. Nor does it offer any legal authority for the proposition that the mere filing of a chapter 9 bankruptcy petition allows it to disregard its obligations under Michigan law and use the Restricted Funds for any purpose it chooses.[2] Further, consistent with its view that it is somehow exempt from complying with Michigan law, the City does not deny that it is diverting and intends to continue to divert such funds for other purposes during the pendency of this bankruptcy case.

4. Rather than directly confront the narrow matter at issue, the City mischaracterizes the nature of the relief that Plaintiffs seek, asserting erroneously that Plaintiffs are asking the Court to conclude that Plaintiffs are entitled to adequate protection and that "the relief requested by the Plaintiffs will reduce

---

[2] The City asserts that it should be permitted such discretion, but tellingly offers no support for its position. *See* Objection, ¶ 12 (asserting that statutes purporting to restrict the Restricted Funds are unenforceable at this time). To the contrary, as discussed in greater detail below, the law is clear that the Restricted Funds should remain restricted during the pendency of this bankruptcy proceeding. The City most certainly should not be permitted to determine that issue unilaterally by diverting those funds for unauthorized purposes.

3

amounts available for distribution to the City's unsecured creditors." Objection, ¶ 8. Those statements simply are not true.[3]

5. To be clear, Plaintiffs seek the Court's resolution of a narrow legal issue that is critical to the orderly administration of this chapter 9 proceeding – whether voter-approved taxes that are levied and collected for the sole purpose of paying the Unlimited Tax Bonds are Restricted Funds which cannot be used by the City for other purposes during the pendency of this proceeding.[4] That is the issue before the Court, and the relief sought in the Complaint is limited to that precise issue. Plaintiffs have not demanded immediate payment of the Restricted Funds or any other relief that would inure to the detriment of any other interested party.

6. Plaintiffs' measured approach, seeking narrow relief, was taken to address an immediate problem caused by the City's failure to abide by Michigan law, and in recognition of the current status of this case. No plan of adjustment has been filed. Indeed, had Plaintiffs filed an adversary complaint seeking immediate payment, the City and the other creditor constituents would undoubtedly be arguing that Plaintiffs were trying to jump the line, and that such claims were

---

[3] *See* Complaint, ¶ 10 & n.1 (detailing the narrow relief sought and emphasizing that Plaintiffs are not seeking a declaration or order as to whether they have a statutory lien on the Restricted Funds or whether the Restricted Funds were "special revenues," and reserving the right to address those issues at a later date).

[4] Interestingly, at paragraph 11 of the Objection, the City recognizes that the relief sought by Plaintiffs is limited to "requir[ing] the City to hold the Tax Revenues in trust pending the outcome of this bankruptcy case."

4

2644805.1

13-05309-swr    Doc 29    Filed 11/26/13    Entered 11/26/13 18:08:56    Page 4 of 13

premature and inconsistent with an orderly consideration of the issues. But that is not the relief that either the Complaint or the pending Motion seeks.

7. There also is no merit to the City's argument that Plaintiffs are engaged in "claim splitting." Objection, ¶ 11. Plaintiffs filed the Complaint and sought expedited consideration because the City has made clear that it believes it has the right unilaterally to divert and spend the Restricted Funds notwithstanding Michigan law. Indeed, prompt adjudication of this narrow issue is warranted because once the Restricted Funds are dissipated by the City through improper use, the *ad valorem* taxes cannot simply be re-levied. As noted, issues relating to Plaintiffs' rights to the Restricted Funds and whether the City even has a right to collect the taxes if they are not used to pay principal and interest on the Unlimited Tax Bonds, will be addressed and resolved at the appropriate time.

8. In the meantime, it is imperative that the City respect the limitations imposed by the voters, the Michigan Constitution, the Michigan Legislature, and the City Council as to the use of the Restricted Funds. Through their Complaint, and request for expedited resolution of a narrow legal issue, Plaintiffs seek only to preserve the status quo while competing interests are addressed. At various points in this chapter 9 proceeding, the City has made clear its desire for an orderly process and in its dealings with other creditor constituencies has proceeded in a manner consistent with that approach (e.g., the City's payments on Pension and

5

2644805.1

13-05309-swr    Doc 29    Filed 11/26/13    Entered 11/26/13 18:08:56    Page 5 of 13

OPEB have continued during the case). Plaintiffs are simply requesting that a similar approach be adopted here.[5]

## III. The Adequate Protection Issue is a Red Herring

9. Based on its mischaracterization of Plaintiffs' requested relief, the City immediately concludes that Plaintiffs are seeking a form of adequate protection and then argues that Plaintiffs have not made the requisite showing to obtain such protection. Objection, ¶¶ 2, 10. But, as noted, the City's position is based on a false premise; it is only if the Court were to conclude that the City has unfettered discretion to use the Restricted Funds for any purpose it chooses that the issue of whether Plaintiffs might need to seek adequate protection under the Bankruptcy Code would arise.

---

[5] Contrary to the City's contention in a footnote, Plaintiffs' relief does not implicate section 904 of the Bankruptcy Code nor is the Bankruptcy Court's decision in *City of Stockton* relevant. Objection, ¶ 2, n.3 (citing *In re City of Stockton, Cal.*, 478 B.R. 8, 13 (Bankr. E.D. Cal. 2012)). All that the Complaint seeks is (1) a declaration that the Restricted Funds – the proceeds of taxes that are voter-approved, levied, and collected for the exclusive purpose of paying the Unlimited Tax Bonds – cannot be diverted by the City for other purposes during the pendency of this proceeding and (2) an order directing the City to comply with its obligations under Michigan law. Unlike the plaintiffs in *City of Stockton*, Plaintiffs are not asking the Court to order payments from the City during this bankruptcy case, nor are Plaintiffs asking the Court to rule on the ultimate disposition of the Restricted Funds. If granted, the relief requested in the Complaint will only require the City to follow Michigan law and respect the limits imposed upon its use of the Restricted Funds by the City's voters, the Michigan Constitution, the Michigan Legislature, and the City Council.

6
2644805.1

13-05309-swr    Doc 29    Filed 11/26/13    Entered 11/26/13 18:08:56    Page 6 of 13

10. As more fully detailed in the Complaint, no such right to divert the Restricted Funds exists under Michigan law, and nothing in the Bankruptcy Code generally or in chapter 9 specifically suggests that the City, by the mere act of filing a bankruptcy petition, can create new rights to the Restricted Funds or otherwise ignore its obligations under Michigan law with regard to such funds. Further, the City has not and cannot point to any contrary authority. While the automatic stay provides the City with "breathing space" to conduct its reorganization in an orderly fashion, it is not a license to violate Michigan law or to ignore the clear, voter-imposed restrictions on the use of tax dollars collected for a specific purpose.[6]

11. Moreover, the City's stance here is directly at odds with the position that the City and the State of Michigan (the "State") have advanced in support of the City's *Motion for Entry of an Order (I) Authorizing the Debtor to Enter Into and Perform Under Certain Transaction Documents With the Public Lighting Authority and (II) Granting Other Related Relief* [Docket No. 1341] (the "PLA Motion"). In response to various objections to the PLA Motion that creditors would be adversely impacted by the pledge of certain taxes, the City and State argue that the utility taxes (as defined in the PLA Motion) that the City seeks to

---

[6] *See In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 144 (Bankr. S.D.N.Y. 2010) (municipal debtors must comply with state law unless those laws are specifically preempted by chapter 9).

pledge in support of the Public Lighting Authority's bonds are statutorily-restricted funds to be used only for prescribed purposes and thus generally not available to make general fund payments or payments to creditors.[7] The City and State thus admit that funds that are restricted by state law remain restricted during a chapter 9 proceeding, which is wholly consistent with the manner in which other courts and municipal debtors have treated restricted funds in other chapter 9 cases.[8] The Restricted Funds at issue here are entitled to the same treatment.

12. Finally, Plaintiffs firmly believe that the adequate protection issue raised by the City is a red herring, and thus irrelevant to a determination of whether the City must follow Michigan law during the course of this proceeding. Nevertheless, Plaintiffs emphasize that they strongly disagree with the City's

---

[7] *State of Michigan's Reply in Support of Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Enter Into and Perform Under Certain Transaction Documents With the Public Lighting Authority and (II) Granting Other Related Relief* [Docket No. 1793] at 3-4; *Debtor's Reply to Limited Objections to Motion for Entry of an Order (I) Authorizing the Debtor to Enter Into and Perform Under Certain Transaction Documents With the Public Lighting Authority and (II) Granting Other Related Relief* [Docket No. 1795] at 3, 5-7.

[8] For example, the bankruptcy court and bankruptcy appellate panel decisions in *City of Vallejo* make clear that restricted funds are not available to pay general fund obligations and cannot be used for unauthorized purposes. *Int'l Assoc. of Firefighters v. City of Vallejo (In re City of Vallejo)*, 408 B.R. 280, 285, 290-93 (B.A.P. 9th Cir. 2009); *In re City of Vallejo*, No. 08–26813–A–9, 2008 WL 4180008, *5-9, *22 (Bankr. E.D. Cal. Sept. 5, 2008).

characterization of the Unlimited Tax Bonds as unsecured debt,[9] and note their intention to contest that issue at the appropriate time. It is Plaintiffs' position that the Unlimited Tax Bonds have a statutory lien, as defined in Bankruptcy Code section 101(53), on the *ad valorem* taxes that, pursuant to Michigan law, have been expressly approved by the voters and pledged to secure payments of the Bonds, and that those *ad valorem* taxes constitute pledged "special revenues" as defined in Bankruptcy Code sections 902(2)(e) and 922(d).[10]

## IV. Joinder of Other Parties is Not Necessary or Appropriate

13. There is also no merit to the City's argument that it is necessary to join other parties in order for the Court to grant the narrow relief requested in the Complaint. Contrary to the City's assertions, the requested relief will not "reduce amounts available for distribution to the City's unsecured creditors" as the City suggests. *See* Objection, ¶ 8.[11] Consequently, it is difficult to see how any creditor

---

[9] The City's Second Amended Schedule of Claims lists the City's Unlimited Tax Bonds as unsecured.

[10] *See* 11 U.S.C. § 922(d) ("Notwithstanding section 362 of this title and subsection (a) of this section, a petition filed under this chapter does not operate as a stay of application of pledged special revenues in a manner consistent with section 92[8] of this title to payment of indebtedness secured by such revenues.").

[11] The City is also incorrect in asserting – without citation – that the potential reduction in amounts available to other creditors would entitle "some" unspecified creditors to intervene in this Adversary Proceeding. *See United States v. ABC Indus.*, 153 F.R.D. 603, 607 (W.D. Mich. 1993) ("Economic interest [alone] is insufficient [to intervene as of right]."); *In re Shubh Hotels Pittsburgh, LLC*, 495 B.R. 274, 284 (Bankr. W.D. Pa. 2013) (denying intervention in adversary

9

constituent could be adversely impacted by a decision requiring that the Restricted Funds remain restricted.

14. Similarly misguided is the notion that it is necessary to join all holders of the Unlimited Tax Bonds as well as all other insurers of such Bonds. Such joinder would be necessary only upon a showing that such parties might be adversely impacted by the requested relief, and that their interests would otherwise not be adequately represented by existing parties.[12] However, given that Plaintiffs seek to bring the City in compliance with Michigan law, and the fact that all holders of Unlimited Tax Bonds would benefit from Plaintiffs' requested relief, it is difficult to conceive how such a showing might be met.

---

proceeding on grounds that "[a] mere economic interest in the outcome of the litigation is [generally] insufficient to support a motion to intervene." (quoting *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995))).

[12] *See* FED. R. BANKR. P. 7019 (incorporating Federal Rule of Civil Procedure 19, under which a party must be joined if the court "cannot afford complete relief" or if a person has an interest relating to the subject matter of the action and that disposing of the action without involving the person will "impair or impede the person's ability to protect the interest" or "leave an existing party subject to substantial risk of incurring inconsistent obligations because of the interest."); *Sch. Dist. of Pontiac v. Sec. of U.S. Dep't of Educ.*, 584 F. 3d 253, 266 (6th Cir. 2009) (no need to join parties whose interests are "adequately represented" in suit already); *Amer. Express Travel Related Servs., Co. v. Bank One-Dearborn N.A.*, 195 F. App'x 458, 461 (6th Cir. 2006) (unpublished) (same); *Glassman Edwards, Wade & Wyatt, P.C. v. Wolf, Haldenstein Adler Freeman & Hertz, LLP*, 601 F. Supp. 2d 991, 1000 (W.D. Tenn. 2009) (same).

15. It is also difficult to conceive how the Bondholders will be prejudiced by the Complaint. First, since the Complaint does not affect the terms of the Bonds – it does not change how interest is paid or the value of the Bonds – the interests of the Bondholders remain unchanged. Second, since the Bonds at issue are insured, the City's failure to comply with Michigan law creates a risk for the insurer, and not for the Bondholder, if the City does not pay on the Bonds. As the insurers are required to make payment in the event of the City's default (and, indeed, have already done so), the interests of the insurers in enforcing compliance with Michigan law are completely aligned with those of the Bondholders.

16. The City's legitimate interests likewise will not be prejudiced in any meaningful way. To the extent that the Court grants the requested relief, all that the City will be required to do is abide by Michigan law and hold the Restricted Funds in trust pending the outcome of this bankruptcy case. Indeed, the City expressly recognizes the limited nature of the relief sought. *See* Objection, ¶ 11.

## V. This Adversary Proceeding Does Not Violate the Automatic Stay

17. There is also no merit to the City's argument that this litigation may be subject to the automatic stay, particularly as it pertains to the Individual Defendants named in the Complaint. Indeed, the City fails to provide any support for this proposition. A majority of courts have held that adversary proceedings do

not violate the automatic stay because they are suits filed in the bankruptcy court.[13] Since the filing of adversary proceedings against the debtor does not violate the automatic stay, the filing of such proceedings against other parties protected by the automatic stay should also not violate the automatic stay.

## VI. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and establish an expedited schedule pursuant to which the Court can promptly resolve the issue of whether the Restricted Funds must remain restricted during the pendency of this chapter 9 case.

Dated: November 26, 2013    **JAFFE RAITT HEUER & WEISS, P.C.**

By: /s/ Paul R. Hage
Louis P. Rochkind (P24121)
Paul R. Hage (P70460)
27777 Franklin Road, Suite 2500
Southfield, MI 48034-821
Telephone: (248) 351-3000
lrochkind@jaffelaw.com
phage@jaffelaw.com

---

[13] *See In re Uni-Marts, LLC*, 404 B.R. 767, 783 (Bankr. D. Del. 2009) ("Although the language of section 362(a) suggests that the automatic stay operates against all proceedings, the majority of courts hold that 'the Code implicitly permits the filing of suit in the bankruptcy court against a debtor without violating the automatic stay.'" (quoting *Nat'l City Bank of Minneapolis v. Lapides* (*In re Transcolor Corp.*), 296 B.R. 343, 358 (Bankr. D. Md. 2003))).

12

-and-

**SIDLEY AUSTIN LLP**

James F. Bendernagel, Jr.
Guy S. Neal
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8041
jbendernagel@sidley.com
gneal@sidley.com

Jeffrey E. Bjork
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
 jbjork@sidley.com

*Counsel for National Public Finance Guarantee Corp.*

-and-

**CHADBOURNE & PARKE LLP**

Lawrence A. Larose
Samuel S. Kohn
Marc D. Ashley
30 Rockefeller Plaza
New York, NY 10012
Telephone: (212) 408-5100
llarose@chadbourne.com
skohn@chadbourne.com
mashley@chadbourne.com

*Counsel for Assured Guaranty Municipal Corp.*

13